```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 06/08/2020
```

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------X
UNITED STATES OF AMERICA          :
                                  :
     -against-                    :     No. 16 Cr. 576 (JFK)
                                  :
ANTHONY MASCUZZIO,                :     **OPINION & ORDER**
                                  :
                    Defendant.    :
-------------------------------------X

<u>APPEARANCES</u>

FOR DEFENDANT ANTHONY MASCUZZIO:
    James Kousouros
    LAW OFFICES OF JAMES KOUSOUROS

FOR THE UNITED STATES OF AMERICA:
    David W. Denton, Jr.
    U.S. ATTORNEY'S OFFICE FOR THE SOUTHERN DISTRICT OF NEW YORK

**JOHN F. KEENAN, United States District Judge:**

    Before the Court is a motion by Anthony Mascuzzio for a sentence reduction to time served and his immediate transfer from the Federal Correctional Institution, Allenwood Low in Pennsylvania to home confinement for the unserved portion of his sentence due to Mascuzzio's asthma and the Coronavirus, COVID-19 ("COVID-19").  Mascuzzio brings the motion pursuant to the First Step Act, 18 U.S.C. § 3582(c)(1)(A), commonly known as the compassionate release statute.  The Government opposes Mascuzzio's request on the merits and argues that he is not entitled to compassionate release because Mascuzzio's medical conditions and the 18 U.S.C. § 3553(a) sentencing factors do not warrant a modification to the terms of his incarceration.

1

For the reasons set forth below, Mascuzzio's motion is DENIED.

## I. Background

On January 26, 2017, a five-count superseding indictment charged Mascuzzio and three others with conspiracy to commit bank burglary and bank theft, in violation of 18 U.S.C. § 371; bank burglary, in violation of 18 U.S.C. § 2113(a); and bank theft, in violation of 18 U.S.C. § 2113(b). (Superseding Indictment, ECF No. 65.) The charges stemmed from Mascuzzio's participation in a conspiracy to burglarize two banks over the course of two months using oxygen and acetylene torches to cut through the banks' roofs and into their vaults, in order to steal more than $20 million dollars' worth of cash, valuables, and priceless keepsakes from hundreds of victims. (Am. Presentence Investigation Report ("PSR") ¶¶ 17–63.) At the time the banks were burglarized, Mascuzzio was serving a term of supervised release for his role in unrelated conspiracies to distribute marijuana, in violation of 21 U.S.C. § 841(b)(1)(B), and to transport, transmit, and transfer stolen property, in violation of 18 U.S.C. § 371. (Id. ¶ 93.) The case was initially assigned to Judge Laura Taylor Swain, but on September 11, 2017, it was reassigned to former Judge Katherine B. Forrest.

On December 15, 2017, Mascuzzio appeared before Judge Forrest and pleaded guilty to two counts of bank theft pursuant to a plea agreement he had signed with the Government. (Id. ¶ 9.) During his allocution, Mascuzzio admitted to entering and taking money and valuables from a HSBC Bank in Brooklyn, New York, and a Maspeth Federal Savings Bank in Queens County, New York. (Id. ¶ 65; Plea Tr. at 26:8-21, ECF No. 186.) As part of his plea agreement, Mascuzzio returned certain valuable religious items that were stolen, including a silver scroll case and scroll, a silver mortar and wooden pestle, and a silver case containing a small book. (PSR ¶ 11.) However, the vast majority of the items that were stolen from the banks' safe deposit boxes were never recovered.

Mascuzzio's sentencing occurred on May 4, 2018, during which Judge Forrest first allowed him and his counsel the opportunity to identify any inaccuracies in Mascuzzio's Presentence Investigation Report ("the PSR"), after which the Court adopted the PSR's uncontested factual statements. (Sent. Tr. at 4:18-7:25, ECF No. 254.) Next, Judge Forrest found a Guidelines incarceration range of 110 months to 137 months. (Id. at 10:5-8.) Unlike Mascuzzio's co-defendants, however, Judge Forrest's guidelines calculation included a three-point reduction for acceptance of responsibility, which was supported by the Government. (Id. at 9:14-10:1.)

3

Before turning to the Court's sentencing determination, Judge Forrest inquired how the parties wished to address Mascuzzio's violations of supervised release, all of which directly arose out of Mascuzzio's conduct related to the bank thefts to which he had pleaded guilty. (Id. at 10:12-11:11.) Judge Forrest granted the Government's motion to dismiss the specifications, ruling that they were "eliminated as playing a role in this sentencing proceeding, except to note under the 3553(a) factors that the defendant did commit this crime while he was on supervision for another crime. That, of course, is always relevant to the Court's overall consideration." (Id. at 11:1-6.)

Judge Forrest analyzed the federal sentencing factors set forth in 18 U.S.C. § 3553(a), during which she found that "the crime here was a crime with a lot, a lot of emotional impact," and the victims "are people in pain, human beings in pain, and a lot of them." (Id. at 27:16-22.) Judge Forrest explained that she believed Mascuzzio was "sincere" in his remorse and commitment to living a new life, (id. at 30:3-5), but Mascuzzio's offense "was an intentional crime . . . you knew you were doing it; you'd done it before; you were on supervised release; you know you shouldn't be committing crimes, for goodness sake, it didn't deter you at all," (id. at 31:4-8). Nevertheless, Judge Forrest determined that a below-Guidelines

4

sentence of "seven years, which is 84 months, is a period of time which both recognizes the harm and the social impact that you have had, but it also recognizes that you may be one of the ones, even though you've done this before, where you're ready to change." (Id. at 32:16-24.) To date, Mascuzzio has served approximately 33 months of his 84-month sentence. Mascuzzio is scheduled for release on September 14, 2023.

In September 2018, Judge Forrest resigned from the bench and the case was reassigned to this Court.

On May 21, 2020, Mascuzzio (through his counsel) filed a motion for compassionate release pursuant to the First Step Act, 18 U.S.C. § 3582(c)(1)(A)(i), on the grounds that Mascuzzio's history of asthma and the COVID-19 pandemic constitute "extraordinary and compelling reasons" to reduce his sentence and order his immediate release to home confinement. (Letter Mot. for First Step Act Relief in Light of COVID-19 from James Kousouros to Hon. John F. Keenan (May 21, 2020), ECF No. 321.)

On May 28, 2020, the Government filed its opposition. (Letter from David W. Denton, Jr., Assistant United States Attorney, to Hon. John F. Keenan (May 28, 2020) ("Gov't's Opp'n"), ECF No. 325.) The Government argued that Mascuzzio's request failed to set forth "extraordinary and compelling reasons" to support his immediate release to home confinement and the factors set forth in 18 U.S.C. § 3553(a) counsel against

5

any reduction in Mascuzzio's term of imprisonment.  The Government's letter also attached four victim statements it had received after providing notice of Mascuzzio's pending motion pursuant to the Crime Victims' Rights Act, codified in 18 U.S.C. § 3771.  Mascuzzio (through his counsel) declined to file a reply to the Government's opposition.

## II.  Discussion

### A.  Legal Standard

18 U.S.C. § 3582(c)(1)(A) allows a court to reduce a defendant's sentence where "extraordinary and compelling reasons warrant such a reduction" and "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i).  In doing so, the Court must also consider "the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable." Id. § 3582(c)(1)(A).  "Application of the § 3553(a) factors requires an assessment of whether the relevant factors 'outweigh the "extraordinary and compelling reasons" warranting compassionate release . . . [and] whether compassionate release would undermine the goals of the original sentence.'" United States v. Daugerdas, --- F. Supp. 3d ---, No. 09 Cr. 581 (WHP), 2020 WL 2097653, at *4 (S.D.N.Y. May 1, 2020) (alterations in original) (quoting United States v. Ebbers, --- F. Supp. 3d ---, No. 02 Cr. 11443 (VEC), 2020 WL 91399, at *7 (S.D.N.Y. Jan. 8, 2020)).

The relevant policy statement issued by the U.S. Sentencing Commission pertaining to compassionate release is found at § 1B1.13 of the Sentencing Guidelines.  Application Note 1 to § 1B1.13 describes four potentially extraordinary and compelling reasons for compassionate release: (1) the defendant has a terminal medical condition or a serious health condition that substantially diminishes his ability to provide self-care; (2) the defendant is at least 65 years old and has served 75% of his sentence; (3) family circumstances; and (4) an extraordinary and compelling reason other than or in combination with one of the above. U.S. Sentencing Guidelines Manual (U.S.S.G.) § 1B1.13(1)(A) & cmt. n.1(A)-(D) (U.S. Sentencing Comm'n 2018). The defendant, however, must not be "a danger to the safety of any other person or to the community," id. § 1B1.13(2), and "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason," 28 U.S.C. § 994(t); see also U.S.S.G. § 1B1.13 cmt. n.3.

  **B.  Analysis**

The Court is sympathetic to the heightened risk certain individuals face from COVID-19. See People Who Are at Higher Risk for Severe Illness, Ctrs. for Disease Control & Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html (last visited June 5, 2020); see also United States v. Park, --- F. Supp. 3d ---, No.

7

16 Cr. 473 (RA), 2020 WL 1970603, at *2 (S.D.N.Y. Apr. 24, 2020) ("The nature of prisons—crowded, with shared sleeping spaces and common areas, and often with limited access to medical assistance and hygienic products—put those incarcerated inside a facility with an outbreak at heightened risk.") (collecting sources).

Nevertheless, after considering the 3553(a) factors, including the nature and circumstances of Mascuzzio's offense and his history and characteristics, 18 U.S.C. § 3553(a)(1), as well as the need for the sentence imposed and the kinds of sentences available, id. § 3553(a)(2)-(3), the Court finds that reducing Mascuzzio's term of incarceration would not be "consistent with applicable policy statements issued by the Sentencing Commission," id. § 3582(c)(1)(A)(i), nor would it be supported by the "factors set forth in section 3553(a)," id. § 3582(c)(1)(A).  Accordingly, Mascuzzio's motion must be denied.

First, Mascuzzio has failed to articulate an extraordinary and compelling reason why his sentence should be reduced.  The foundation of Mascuzzio's motion is the generalized threat that COVID-19 poses to incarcerated individuals with asthma. According to the Centers for Disease Control and Prevention ("the CDC"), adults aged 65 years or older and people of any age who have serious underlying medical conditions may be at higher risk for a severe illness from COVID-19. See People Who Are at

8

Higher Risk for Severe Illness, Ctrs. for Disease Control & Prevention, supra. Here, however, Mascuzzio's age and his asthma are not severe enough to warrant compassionate release. Mascuzzio is 40, significantly younger than the CDC's high-risk cutoff age. See id.; see also, e.g., United States v. Skelos, No. 15 Cr. 317 (KMW), 2020 WL 2508739, at *2 (S.D.N.Y. May 15, 2020) ("Defendant has not demonstrated the existence of extraordinary and compelling circumstances in his case. Defendant is 37 years old, and thus faces a relatively low risk of hospitalization or death from COVID-19.") (collecting sources). While the CDC has listed "moderate to severe asthma" as a primary risk factor for COVID-19, here, Mascuzzio's asthma cannot be characterized as such, nor as a serious health condition that substantially diminishes his ability to provide self-care. According to his medical records from the Bureau of Prisons, as of March 18, 2020, Mascuzzio "has not had to use [an Albuterol inhaler to treat his asthma] in several months despite 'heavy workouts,'" (Ex. A to Gov't's Opp'n at 1), and on September 11, 2019, he "[d]enie[d] wheezing, cough, shortness of breath, night time symptoms of asthma or exercise induced asthma," (id. at 12). Finally, Mascuzzio does not suffer from other COVID-19 risk factors looked to by courts, such as diabetes or immunocompromization. See, e.g., Park, 2020 WL 1970603, at *1 (granting release to 44-year old defendant with a

9

documented history of respiratory issues, including severe asthma and immune-compromising diseases); United States v. Williams, --- F. Supp. 3d ---, No. 17 Cr. 121 (VAB), 2020 WL 1974372, at *3 (D. Conn. Apr. 24, 2020) (granting release to defendant with chronic asthma, hypertension, diabetes, and high cholesterol); United States v. Smith, --- F. Supp. 3d ---, No. 12 Cr. 133 (JFK), 2020 WL 1849748, at *1 (S.D.N.Y. Apr. 13, 2020) (granting release to 62-year old defendant who suffered from asthma, high cholesterol, blood clots, a thyroid condition, and suspected multiple myeloma); but see, e.g., United States v. Castillo, No. 17 Cr. 283 (LAP), 2020 WL 2848097, at *2 (S.D.N.Y. June 2, 2020) (denying release to defendant with asthma); United States v. Aronshtein, No. 11 Cr. 121 (GBD), 2020 WL 2836770, at *2 (S.D.N.Y. June 1, 2020) (same).

Second, and decisive here, even if Mascuzzio's health issues constituted "extraordinary and compelling reasons" to reduce his sentence, application of the § 3553(a) sentencing factors outweighs any such reduction. The factors that weigh in Mascuzzio's favor, such as the need to provide necessary medical care, are overshadowed by the combined force of "the nature and circumstances of the offense" and the need for the sentence imposed to "reflect the seriousness of the offense," "promote respect for the law," "provide just punishment for the offense," "afford adequate deterrence to criminal conduct," and "protect

the public from further crimes of the defendant." 18 U.S.C. § 3553(a). For the reasons stated in detail at Mascuzzio's sentencing, which the Court incorporates by reference here, including the finding that Mascuzzio intentionally participated in a series of serious crimes that resulted in property damage to two banks and the theft of tens of millions of dollars' worth of valuables and priceless keepsakes from hundreds of victims, the Court finds that converting Mascuzzio's significantly below-Guidelines 84-month term of incarceration into one of home confinement, when he has served little more than 33 months of that original lenient sentence, would disserve the above important sentencing factors. See, e.g., United States v. Kerrigan, No. 16 Cr. 576 (JFK), 2020 WL 2488269, at *4 (S.D.N.Y. May 14, 2020) (denying compassionate release to one of Mascuzzio's co-defendants who suffered from obesity, liver disease, and other health issues); United States v. Haney, --- F. Supp. 3d ---, No. 19 Cr. 541 (JSR), 2020 WL 1821988, at *5, *7 (S.D.N.Y. Apr. 13, 2020) (denying compassionate release to nonviolent 61-year old defendant "in reasonably good health").

### III. Conclusion

For the reasons set forth above, Mascuzzio's motion for reduction in sentence and his immediate release to home confinement is DENIED.

The Clerk of Court is directed to terminate the motion docketed at ECF No. 321.

**SO ORDERED.**

Dated:  New York, New York
        June 8, 2020

_____
John F. Keenan
United States District Judge